*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 37**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the interest of S.W. and D.W.,
persons under the age of eighteen.

B.W.D.,
*Appellant,*

*v.*

B.W.,
*Appellee.*

No. 20160295
Filed July 17, 2017

On Certification from the Court of Appeals

Fourth Juvenile, Provo
The Honorable Brent H. Bartholomew
Nos. 1102018 and 1102019

Attorneys:

Matthew Hilton, Layton, Robert A. Alsop, North Salt Lake,
for appellant

J. Jarom Bishop, Ogden, for appellee

Martha Pierce, Salt Lake City, for the
Office of the Guardian ad Litem

JUSTICE HIMONAS authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
and JUDGE ORME joined.

ASSOCIATE CHIEF JUSTICE LEE filed an opinion concurring in part
and concurring in the judgment.

Having recused himself, JUSTICE PEARCE does not
participate herein;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

In re S.W.

Opinion of the Court

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1    B.W.D. appeals from a juvenile court order dismissing her petition for custody of her younger sisters, S.W. and D.W., and a separate order dismissing an Order to Show Cause. We reverse the juvenile court's dismissal of both orders and remand, holding that the court misapplied the Utah Uniform Child Custody Jurisdiction and Enforcement Act and deprived B.W.D. of due process.

## BACKGROUND

¶ 2    Custody issues in this case began in 2004 when S.M.W. (Mother) and B.W. (Father), the parents of B.W.D. and her younger sisters, filed for divorce. The Fourth District Court of Utah originally awarded Mother custody in 2007, but transferred custody to Father in 2010. With the district court's approval, Father moved to Kansas in 2013, taking the younger sisters with him. B.W.D., who had turned eighteen before the move, remained in Utah.

¶ 3    The younger sisters visited Mother in Utah in May 2014. In June 2014, B.W.D. filed a child welfare petition alleging that Father had abused and neglected her younger sisters and asking the juvenile court to transfer custody of the two back to Mother. On July 2, 2014, the court imposed a temporary restraining order against Father and appointed a Guardian ad Litem to the case, but it later dismissed the order. The younger sisters were supposed to return to Father in Kansas in July 2014, but they ran away and eventually moved in with Mother. On February 18, 2016, after Mother's arrest for custodial interference, a district court in Kansas issued requisition orders for the younger sisters under the Interstate Compact for Juveniles. One month later, the Utah juvenile court issued an order granting the requisition orders, and it denied a petition for an emergency stay from Mother and B.W.D. Utah then returned the younger sisters to Kansas.

¶ 4    On March 24, 2016, B.W.D. filed an amended petition alleging abuse and neglect. This time, instead of asking the court to transfer custody of the children to Mother, B.W.D. petitioned the court to transfer custody solely to her. Without giving B.W.D. the opportunity to be heard, the juvenile court *sua sponte*

2

dismissed that petition on March 31, 2016. In doing so, the court stated that Utah was an inconvenient forum and that it could therefore decline to exercise its jurisdiction because "[a] Kansas court is the more appropriate forum to address the allegations asserted and issues raised in petitioners' child welfare/custody action." *See* UTAH CODE § 78B-13-207(1) (a child welfare petition may be dismissed if "a court of another state is a more appropriate forum"). But the juvenile court based much of its decision on Utah Code section 78B-13-208, which provides that a court must decline jurisdiction if it would have jurisdiction only "because a person invoking the jurisdiction has engaged in unjustifiable conduct." *Id.* § 78B-13-208(1).[1] Without analyzing whether section 208 was a proper basis for terminating jurisdiction in a case where the court already had jurisdiction before any "unjustifiable conduct" allegedly occurred, the juvenile court dismissed B.W.D.'s petition under this section. But the court did not conclude that B.W.D. herself had engaged in unjustifiable conduct. Instead, based on Mother's arrest for custodial interference, the juvenile court stated that "[i]t is clear that Mother has engaged in unjustifiable conduct and should not be allowed to invoke the Court's jurisdiction." Without giving B.W.D. an opportunity to be heard, and with no direct evidence in support of its determination, the court then went on to impute Mother's misconduct to B.W.D., stating that "[a]bsent . . . any statements whether or not [B.W.D.] knew of the girls' whereabouts while they were in hiding with Mother or that [B.W.D.] was not an accomplice in hiding her sisters," B.W.D. could not "benefit from invoking jurisdiction of this Court simply by dropping Mother as

---

[1] Even if the court may conclude that it has jurisdiction because of a party's unjustifiable conduct, it may still decline to exercise that jurisdiction only if (1) there is a lack of consensus among parents and guardians that the court should assert jurisdiction, (2) no other court with jurisdiction over the child custody matters at issue has concluded that Utah is a more appropriate forum, and (3) another state would have jurisdiction in the event that the Utah court declined it. UTAH CODE § 78B-13-208(1).

a co-petitioner."[2] The juvenile court therefore declined to exercise jurisdiction over the custody and welfare matter and dismissed the petition, stating that the matter could be brought in a Kansas court instead. *See id.* § 78B-13-208(1)(c) (a court may dismiss a petition under section 208 only if some other state is capable of asserting jurisdiction over the custody proceeding).

¶ 5    On April 1, 2016, the Guardian ad Litem filed a motion for an order to show cause (OSC) regarding Father's conduct after Kansas's requisition orders. The juvenile court dismissed the OSC on April 14, 2016, stating that it lacked jurisdiction regarding the welfare of the younger sisters as a result of its disposition of B.W.D.'s petition.

¶ 6    On April 15, 2016, B.W.D. filed a notice of appeal from both the order dismissing the custody and welfare petition and the order dismissing the OSC. The court of appeals then certified the case to the Utah Supreme Court under Utah Code section 78A-3-102(3)(b). The Guardian ad Litem filed a brief, but Father, for reasons unknown to us, declined to file an appellate brief.[3]

---

[2] The first petition for custody and welfare did not list Mother as a co-petitioner but requested that the court grant her custody of the younger sisters.

[3] Although "we do not necessarily refuse to consider an appeal simply because a respondent is unable or unwilling to defend his judgment," *Harrison v. Harrison*, 462 P.2d 170, 171 (Utah 1969), a party who fails to file an appellate brief leaves the framing of the issues to his adversary and therefore proceeds at his own peril. We have repeatedly said that "[a]n appellate court is not a depository in which [a party] may dump the burden of argument and research." *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (second alteration in original) (internal quotation marks omitted). Thus, in cases where a party does not refute the other side's arguments, we will not "become [its] advocate by formulating arguments on its behalf." *B.A.M. Dev., L.L.C. v. Salt Lake Cty.*, 2012 UT 26, ¶ 35 n.8, 282 P.3d 41. Because that is the case here, we will not make arguments on Father's behalf but reserve the right to reevaluate our conclusions in a future case in which we have the full benefit of the adversarial process.

## STANDARD OF REVIEW

¶ 7   We review a court's determination of jurisdiction for correctness, granting no deference to the lower court. *In re A.C.M.*, 2009 UT 30, ¶ 6, 221 P.3d 185. We will uphold a juvenile court's factual findings underpinning a jurisdictional determination unless they are clearly erroneous. *In re W.A.*, 2002 UT 127, ¶ 8, 63 P.3d 607.

## ANALYSIS

¶ 8   B.W.D. argues that the juvenile court deprived her of due process because it did not provide her an opportunity to be heard before it made its custody determination. We are in complete agreement and reverse: the juvenile court erred in its analysis of whether Utah should retain exclusive, continuing jurisdiction over the custody matter for the younger sisters and, therefore, erred in dismissing B.W.D.'s petition. And because the court relied on its disposition of the petition to dismiss the OSC, our holding necessarily results in our reversal of that order too.

¶ 9   Utah has adopted a version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which aims to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." *Nevares v. Adoptive Couple*, 2016 UT 39, ¶ 11, 384 P.3d 213 (alteration in original) (citation omitted). To accomplish this goal, the UCCJEA sets out a detailed analytical framework for courts to follow in determining whether they may assert or decline jurisdiction over a child custody matter.

¶ 10  Because a Utah court validly made the original custody decision for the younger sisters after their parents' divorce, Utah enjoys jurisdiction over all child custody determinations involving the siblings. *See* UTAH CODE § 78B-13-202(1) (providing that when a court of this state makes an initial custody determination, it enjoys "exclusive, continuing jurisdiction over the determination" until certain conditions are met). This jurisdiction is exclusive and continuing until the court "determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships," *id.* § 78B-13-202(1)(a), or that "neither the child, nor a parent, nor any

5

person acting as a parent presently resides in this state," *id.* § 78B-13-202(1)(b). However, a court may "decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." *Id.* § 78B-13-207(1). But it may dismiss a petition on this basis only after giving all parties the opportunity to brief the issue. *Id.* § 78B-13-207(2). Even then, dismissal is appropriate only once "a child custody proceeding [has been] commenced in another designated state." *Id.* § 78B-13-207(3).

¶ 11   Apart from a finding of an inconvenient forum, a court may also abdicate jurisdiction if the court "has jurisdiction under this chapter because a person invoking the jurisdiction has engaged in unjustifiable conduct." *Id.* § 78B-13-208(1). In that case, the court shall decline to exercise its jurisdiction unless all parents and guardians consent to the court's jurisdiction, another court with jurisdiction determines that the Utah court is the more appropriate forum, or no other state would have jurisdiction. *Id.*

¶ 12   Here, the juvenile court determined that "there appears to be substantial evidence in Utah regarding [the younger sisters'] protection, training, and personal relationships" and therefore exclusive, continuing jurisdiction in Utah may be proper. But, citing Utah Code section 78B-13-202(2), the court held that it "may decline to exercise its jurisdiction if the court determines it is an inconvenient forum." This was error. An inconvenient-forum analysis is governed by Utah Code section 78B-13-207 and requires the court to "allow the parties to submit information" and consider all relevant factors regarding whether it is appropriate for a court of another state to exercise jurisdiction. *Id.* § 78B-13-207(2). The court did none of this. Accordingly, to the extent that the court declined jurisdiction under section 207, its decision was in error.

¶ 13   The juvenile court also erred in making a determination of unjustifiable conduct under Utah Code section 78B-13-208(1). The juvenile court stated that "[i]t is clear that Mother has engaged in unjustifiable conduct and should not be allowed to invoke the Court's jurisdiction." And it noted that although the petition no longer asked for the court to transfer custody to Mother, B.W.D. retained Mother's former legal counsel. Thus, "[a]bsent . . . any statements whether or not [B.W.D.] knew of the girls' whereabouts while they were in hiding with Mother or that

[B.W.D.] was not an accomplice in hiding her sisters," the juvenile court held that B.W.D. could not "benefit from invoking jurisdiction of this Court simply by dropping Mother as a co-petitioner." The juvenile court thus *sua sponte* attributed Mother's misconduct to B.W.D. without giving B.W.D. an opportunity to be heard on the matter. And to the extent the court's attribution of Mother's misconduct was a factual determination, we hold that it was not based on any facts in the record and was therefore clearly erroneous. And the legal conclusions stemming from the erroneous factual determination served to deprive B.W.D. of due process.

¶ 14 We first note that the court erred in applying section 208's "unjustifiable conduct" test. Section 208 applies only when the court has jurisdiction "*because* a person invoking the jurisdiction has engaged in unjustifiable conduct." *Id.* § 78B-13-208(1) (emphasis added). But here, as the juvenile court noted, Utah had jurisdiction as a result of its initial custody determination, not because of Mother's conduct in hiding the younger sisters while they were on the run. *See id.* § 78B-13-202(1).

¶ 15 In any case, due process requires that the court should have given B.W.D. an opportunity to be heard before attributing Mother's conduct to B.W.D. in dismissing the petition. *See Salt Lake Legal Def. Ass'n v. Atherton*, 2011 UT 58, ¶ 2, 267 P.3d 227 ("At a minimum, the right to due process requires that those with an interest in a proceeding be given notice and an opportunity to be heard in a meaningful manner before their interests are adjudicated by a court."). The juvenile court assumed B.W.D.'s guilt by putting the burden on B.W.D. to prove that she "was not an accomplice in hiding her sisters," but it did not give her the opportunity to rebut the court's assumption. This was a classic denial of due process. Because its order was without basis in law, we reverse the juvenile court's dismissal of B.W.D.'s petition.

¶ 16 Because the juvenile court's dismissal of the Guardian ad Litem's OSC was also based on its erroneous legal determination that it lacked jurisdiction, we reverse that order as well and remand for a proper determination of jurisdiction for both orders. On remand, the court may proceed to the merits of B.W.D.'s petition or it may consider whether it should decline jurisdiction under any applicable law, including Utah Code section 78B-13-207. In the event that the juvenile court does undertake an

inconvenient-forum analysis on remand, we emphasize that section 207 requires the court to give B.W.D. an opportunity to submit information and requires the court to consider all relevant factors, including

> (a) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (b) the length of time the child has resided outside this state; (c) the distance between the court in this state and the court in the state that would assume jurisdiction; (d) the relative financial circumstances of the parties; (e) any agreement of the parties as to which state should assume jurisdiction; (f) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child; (g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (h) the familiarity of the court of each state with the facts and issues of the pending litigation.

UTAH CODE § 78B-13-207(2).

¶ 17  A proper analysis under this section would satisfy due process by allowing B.W.D. to be heard on the issues in her petition, and if the juvenile court determines that it should retain jurisdiction over the custody case, it should proceed to decide the OSC on the merits.

## CONCLUSION

¶ 18  The juvenile court erred in applying an "unjustifiable conduct" test, and its inconvenient-forum determination was deficient, leading it to erroneously deny B.W.D.'s petition and the motion for an order to show cause. We thus reverse and remand to the juvenile court for further proceedings in accordance with this opinion.

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶ 19 This is an unusual case. It comes to us without any adversary briefing. The only briefs we have on appeal are the appellant's and the Guardian ad Litem's (submitted in support of the appellant's position). We have no opposing brief because the father chose to rest on the juvenile court's decision and did not submit a brief on appeal.

¶ 20 With this in mind, I would decide this case on the narrowest possible ground, without addressing other issues not essential to our decision. The narrow ground is that the juvenile court dismissed the petition filed in this case *sua sponte*—without the benefit of any adversary briefing by the parties. That was error, as B.W.D. had both a statutory and a due process right to be heard before her petition was dismissed.

¶ 21 The majority so concludes in its opinion. *See supra* ¶¶ 12-13. Yet it also proceeds to opine on other questions presented below and briefed (one-sidedly) on appeal. And on those issues the court purports to "reserve the right to reevaluate our conclusions in a future case in which we have the full benefit of the adversarial process." *Supra* ¶ 6 n.3.

¶ 22 I agree with the impulse behind that reservation. But I think there is a better way to reserve our right to reconsider aspects of our opinion in a future case. In my view that is simply not to reach these other issues. I would take that course here. For that reason I concur only in the portions of the majority opinion that find error in the juvenile court's dismissal of B.W.D.'s petition without giving her the opportunity to be heard.

———