**2023 UT App 10**

# THE UTAH COURT OF APPEALS

LIDIA V. MOWER,
Appellant,
*v.*
THOMAS W. MOWER,
Appellee.

Opinion
No. 20210101-CA
Filed January 20, 2023

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
No. 124100133

Cassie J. Medura and Jarrod H. Jennings,
Attorneys for Appellant

Douglas B. Thayer and Mark R. Nelson,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

ORME, Judge:

¶1     Thomas E. Mower and Lidia V. Mower stipulated to a bifurcated divorce in which the district court dissolved their marriage but reserved for trial all other issues, which were the subject of contentious litigation. Thomas died after the trial concluded but shortly before the court issued its ruling that would have resolved all but one issue. As a result of Thomas's death, the court held that it no longer had jurisdiction over the divorce action

and closed the case, indicating that Lidia could pursue any surviving claims in probate court against Thomas's estate.[1]

¶2    On appeal, Lidia argues that the court erroneously concluded that the unresolved claims in the divorce action abated on Thomas's death. Thomas's son, Thomas W. Mower (Thomas Jr.), in his capacity as special administrator of the Estate of Thomas E. Mower, by special appearance represents his late father's interests on appeal. *See generally* Utah R. App. P. 38(a), (c). We hold that under the facts of this case, Thomas's death did not deprive the court of jurisdiction to resolve most of the unresolved claims. Accordingly, we reverse and remand.

BACKGROUND

¶3    Thomas and Lidia married in 2001. Lidia initiated divorce proceedings in 2012. The ensuing litigation was very contentious and involved complex issues including grounds for divorce, a request for a retroactive increase in alimony,[2] custody of and parent-time with their child born during the marriage, child support, the potential equitable division of a large estate that was arguably "worth upwards of $150,000,000,"[3] and attorney fees.

---

1. Because the individuals share the same last name, we follow our usual practice of referring to them by their first names, with no disrespect intended by the apparent informality.

2. Lidia sought a retroactive increase of alimony for 51 months, which represented the span between entry of a temporary order awarding her alimony and her remarriage.

3. This included the determination of what portion of the large estate constituted marital property and what portion constituted Thomas's separate property.

¶4 In May 2013, on the parties' stipulation, the district court entered a bifurcated decree of divorce, dissolving the parties' marriage but reserving all other issues for trial. The court ruled that it would "value the estate as of the date this divorce decree enters rather than at the day of trial" and that "[a]ll other issues of dispute will remain open for further resolution by the Court." Following entry of the bifurcated divorce decree, both parties remarried.

¶5 Four and a half years later, the bench trial in this case, which "included voluminous exhibits and witness testimony," was held over the course of sixteen days between November 2017 and December 2018. Although the matter came under advisement awaiting a final ruling in January 2020, the district court "held status conferences to work through issues as they arose," with the most recent one being held in July 2020.

¶6 Thomas passed away on August 2, 2020. The following day, the district court issued a ruling stating it would close the divorce action in twenty days unless it received a valid objection and a supporting memorandum. Lidia objected, filing a Motion for Entry of Final Property Division and a Rule 25 Motion to Substitute Party. Regarding the latter motion, Lidia requested that "the personal representative or other appropriate party" be substituted in the divorce action "to allow the Court to issue a final ruling regarding property settlement and all outstanding financial issues in this case." *See generally* Utah R. Civ. P. 25(a)(1) ("If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."). Thomas's counsel opposed Lidia's objection and motions.[4]

---

4. Thomas's counsel continued to represent Thomas's interests immediately after his death pursuant to *Stoddard v. Smith*, 2001 UT 47, 27 P.3d 546. *See id.* ¶ 11 ("An attorney has an ethical obligation

(continued…)

¶7 In February 2021, following argument on the issues, the court overruled Lidia's objection and denied her motions. The court first stated that shortly before Thomas's death, it had completed "its findings of fact and was prepared to issue a ruling reserving only a single outstanding issue that [it] intended to invite the parties to address via supplemental briefing." Despite this, following a lengthy discussion of *Porenta v. Porenta*, 2017 UT 78, 416 P.3d 487, the court held that its prior orders regarding child support, parent-time, and custody abated upon Thomas's death and that Lidia, as the surviving party in a bifurcated divorce, was required "to pursue unresolved equitable claims to marital property before a probate court." A few months later, the court issued a Final Order, stating, "Due to the untimely death of [Thomas], this court no longer has jurisdiction over this matter and this matter is closed."

¶8 Lidia appeals.

ISSUE AND STANDARD OF REVIEW

¶9 Lidia argues that the court erred in closing the divorce action on the ground that Thomas's death caused it to lose jurisdiction.[5] "We review a court's determination of jurisdiction

---

to take the necessary steps to protect a deceased client's interests immediately following the client's death[.]").

5. Thomas Jr. asserts that the district court did not actually rule that it lost jurisdiction over the divorce action. Instead, he suggests that the court simply exercised its "inherent equitable discretion in deciding to leave [Lidia] to pursue those claims in probate court." But although the court's initial ruling did not invoke the specific term "jurisdiction," it nonetheless concluded, with our emphasis, that "Utah precedent *requires* a surviving party in a bifurcated divorce to pursue unresolved equitable

(continued…)

for correctness, granting no deference to the lower court." *In re S.W.*, 2017 UT 37, ¶ 7, 424 P.3d 7.

ANALYSIS

¶10   In concluding that Thomas's death caused it to lose jurisdiction over the divorce action, the district court relied heavily on our Supreme Court's opinion in *Porenta v. Porenta*, 2017 UT 78, 416 P.3d 487. In that case, during the pendency of a divorce action, the husband executed a quitclaim deed transferring his interest in the marital home to his mother in an effort to prevent the home from being distributed as part of the marital estate. *Id.* ¶¶ 2–3. The husband thereafter died, causing the district court to dismiss the divorce case for lack of jurisdiction. *Id.* ¶ 5. The wife then sued the mother, seeking to set aside the quitclaim deed under the Utah Fraudulent Transfer Act (the UFTA). *Id.* ¶ 6. The district court in that case ultimately ruled that the husband's

---

claims to marital property before a probate court." And in its Final Order, the court clarified, "Due to the untimely death of [Thomas], this court no longer has jurisdiction over this matter and this matter is closed." Accordingly, the court did, in fact, conclude that it lacked jurisdiction and closed the divorce action on that ground.

Lidia also argues that the district court abused its discretion when it denied her motion to substitute Thomas's personal representative in the divorce proceeding under rule 25 of the Utah Rules of Civil Procedure. But because the basis of the court's denial of that motion was its lack of jurisdiction, which ruling we ultimately reverse, we remand to the district court with instructions to reconsider the rule 25 motion on the merits. *See generally State v. De La Rosa*, 2019 UT App 110, ¶ 4, 445 P.3d 955 ("Trial courts do not have discretion to misapply the law.") (quotation simplified).

transfer of his interest in the home to his mother was fraudulent under the UFTA. *Id.* ¶ 8.

¶11    The mother appealed, arguing that the wife's claim was barred because the UFTA requires an ongoing debtor-creditor relationship at the time a claim under the act is filed, which relationship the husband's death had extinguished. *Id.* ¶ 9. Specifically, the mother argued that the wife's claim against the husband "for the whole of the marital estate, including the right to preserve the joint tenancy" in the marital home, *id.* ¶ 14 (quotation simplified), became unenforceable when the husband died because one "cannot bring a claim against a dead person" and because "court orders that award a spouse with property abate upon the death of a spouse," *id.* ¶ 16. *See generally id.* ¶ 12 ("The existence of a claim, or right to payment, is at the heart of the debtor-creditor relationship."); *id.* ¶ 19 ("A claim for equitable distribution arises when one party in a marriage threatens divorce.").

¶12    Quoting its prior decision in *In re Harper's Estate*, 265 P.2d 1005 (Utah 1954), our Supreme Court reaffirmed that

> when the death of one of the parties occurs after the entry of a divorce decree and before the decree is final the decree becomes ineffective to dissolve the marriage, death having terminated that personal relationship. However, the occurrence of death does not abate the action itself and to the extent that property rights are determined by the decree it remains effective and becomes final.

*Porenta*, 2017 UT 78, ¶ 20 (quotation simplified). *See id.* ¶ 28 (reaffirming the precedent set forth in *In re Harper's Estate*). In other words, the Court held that "[t]he death of a spouse during a divorce proceeding abates the action concerning the dissolution of marriage, but it does not abate the action itself when certain

property rights have been determined by the court."[6] *See id.* ¶ 26 (quotation simplified). Conversely, "all interlocutory orders that are effective only during litigation," such as orders restraining the parties from selling property or dissipating the marital estate, "abate upon the dismissal of a divorce case." *Id.* ¶ 27. The court noted that this was in line with "the general rule followed in virtually all jurisdictions . . . that, after one of the spouses dies during a divorce proceeding, and during the time an appeal is pending or during the time when an appeal may be taken, a divorce or dissolution action abates with respect to marital status of the parties but does not abate with respect to property interests affected by the decree." *Id.* ¶ 20 (quotation simplified).

¶13 Finally, the Court held that "[c]laims that survive the death of a party are typically chargeable against that party's estate" and cited rule 25(a)(1) of the Utah Rules of Civil Procedure as a means through which to pursue such claims. *Id.* ¶ 30. *See* Utah R. Civ. P. 25(a)(1) ("If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."). Because

---

6. Our Supreme Court also abandoned, as "clearly *dictum*," a statement in one of its prior decisions that purported to overrule *In re Harper's Estate*. *See Porenta v. Porenta*, 2017 UT 78, ¶ 22, 416 P.3d 487. Namely, the Court abandoned the statement that "the death of one or both parties to a divorce action during the pendency of the action causes the action itself to abate and the married couple's status, including their property rights, reverts to what it had been before the action was filed." *Id.* (quotation simplified). In other words, the Court rejected "the proposition that the parties' property interests in the marital estate are frozen in time during the pendency of divorce litigation" and that "[i]f a party dies before the divorce becomes final, . . . property rights in the marital estate . . . are transported back in time to what they held before the divorce case was filed," *id.* ¶ 23, which includes the reversal of any transfers of property that might have occurred during the pendency of the divorce action, *id.* ¶ 23 n.8.

the Court presumed that the wife's "claim for the whole of the marital estate, including the right to preserve the joint tenancy" in the marital home was not extinguished and was still valid,[7] it held that "a debtor-creditor relationship existed between Husband's estate and Wife at the time Wife filed her UFTA claim." *Id.* ¶ 36 (quotation simplified).

¶14 In sum, as relevant to the issue presented in the current appeal, *Porenta* provides three major takeaways. First, if a spouse dies prior to entry of a final divorce decree, the marriage no longer requires dissolution because death already "terminated that personal relationship." *Id.* ¶ 20 (quotation simplified). *See* 27A C.J.S. *Divorce* § 194 (2022) ("A cause of action for divorce is purely personal, ends on the death of either spouse, and does not survive for the benefit of a third party."); 24 Am. Jur. 2d *Divorce and Separation* § 118 (2022) ("[A] divorce suit abates when one party dies while the suit is pending and before a decree on the merits, because the death terminates the marriage, thus rendering the divorce suit moot as it relates to the parties' marital status."). Second, court orders entered prior to the final divorce decree determining the property rights of the parties do not abate on the spouse's death. *See Porenta*, 2017 UT 78, ¶ 20. However, any "interlocutory orders that are effective only during litigation abate upon the dismissal of a divorce case." *Id.* ¶ 27. *See id.* ¶ 27 n.13 ("This is not unique to the area of divorce law. Interlocutory orders that expressly expire at the end of litigation do just that, regardless of the type of case or how the litigation finally ends."). And third, certain unresolved claims or rights arising from a divorce action may still be pursued following the spouse's death. *See id.* ¶ 36. *See also* 24 Am. Jur. 2d *Divorce and Separation* § 118 ("[G]iven the circumstances presented, a portion of the

---

7. The court employed this presumption because the mother had not carried her burden of persuasion regarding whether property claims raised in a divorce proceeding survive the death of a spouse. *See Porenta*, 2017 UT 78, ¶¶ 32, 36; *infra* ¶ 15.

dissolution action may survive an abatement of the rest of the action.").

¶15 Regarding the third point, because the issue had not been adequately briefed, the *Porenta* Court specifically declined to address "[w]hether a claim for equitable distribution or some other property claim survives the death of a spouse during a divorce proceeding," *Porenta*, 2017 UT 78, ¶ 17, which the Court characterized as "an issue of first impression in Utah," *id.* ¶ 28. Put differently, although the Court held that a district court's orders determining the parties' property rights do not abate upon a spouse's death, it declined to determine whether the same was true for *unresolved* claims for equitable distribution or other property claims. In any event, the case before us is on a different footing, which likewise does not necessitate that we address that specific issue.

¶16 Unlike in *Porenta*, Thomas died *after* the district court entered a bifurcated divorce decree dissolving the parties' marriage but leaving all unresolved issues for a trial that ultimately would not be held for several more years. *See generally* Utah R. Civ. P. 42(b) ("The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross claims, counterclaims, third party claims, or issues."). Accordingly, because Thomas and Lidia's marriage had already been dissolved at the time of Thomas's death, we need not address the effect the death of a spouse has on the underlying claim for equitable distribution of the marital estate in the situation where the parties are still legally married at the time of the death.

¶17 Rather, the issue before us is more straightforward. As previously discussed, the reason a divorce action generally abates upon the death of a party is because the death already "terminated that personal relationship," *Porenta*, 2017 UT 78, ¶ 20 (quotation simplified), thereby "rendering the divorce suit moot

as it relates to the parties' marital status,"[8] 24 Am. Jur. 2d *Divorce and Separation* § 118. But here, the parties stipulated to a bifurcated divorce, and their marriage had been dissolved several years prior to Thomas's death. Indeed, both Thomas and Lidia had remarried. For that reason, unlike in *Porenta*, Thomas's death had no legal effect on the parties' already dissolved marriage and therefore the ground on which the divorce action discussed in *Porenta* abated—i.e., mootness—is not present here.

¶18    Utah courts regularly use bifurcation under rule 42(b) of the Utah Rules of Civil Procedure "to allow divorcing spouses to more expeditiously obtain a divorce before embarking upon the sometimes more complex and time-consuming tasks of determining property division and deciding matters of support." *Parker v. Parker*, 2000 UT App 30, ¶ 8, 996 P.2d 565. It is uncontested that a district court's jurisdiction "to enter equitable orders relating to the property belonging to the marital estate" is unaffected by the bifurcation. *Porenta*, 2017 UT 78, ¶ 19 (quotation simplified). *See* Utah Code Ann. § 30-3-5(2) (LexisNexis Supp. 2022). Indeed, the Utah Constitution directs, "The district court shall have original jurisdiction in all matters except as limited by this constitution or by statute[.]" Utah Const. art. VIII, § 5. *See* Utah Code Ann. § 78A-5-102(1) (LexisNexis Supp. 2022) ("Except as otherwise provided by the Utah Constitution or by statute, the district court has original jurisdiction in all matters civil and criminal."). Furthermore, divorce courts are generally "well

---

8. The mootness doctrine "is a constitutional principle limiting our exercise of judicial power under article VIII of the Utah Constitution" and "not a simple matter of judicial convenience." *Transportation All. Bank v. International Confections Co.*, 2017 UT 55, ¶ 14, 423 P.3d 1171 (quotation simplified). "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants," *State v. Lane*, 2009 UT 35, ¶ 18, 212 P.3d 529 (quotation simplified), thereby rendering a decision "purely advisory," *Transportation All. Bank*, 2017 UT 55, ¶ 15 (quotation simplified).

established as courts of equity that retain jurisdiction over the parties and subject matter for the purposes equity may demand." *Potts v. Potts*, 2018 UT App 169, ¶ 13, 436 P.3d 263 (quotation simplified).

¶19 Here, because the parties' marriage was already dissolved prior to Thomas's death, mootness—a jurisdictional bar, *see State v. Legg*, 2016 UT App 168, ¶ 25, 380 P.3d 360—does not apply to most of the claims at issue.[9] Because no other constitutional or statutory bar to the district court's jurisdiction exists in the case before us, the district court erred in determining that it lacked jurisdiction over all of the claims that remained at issue and in dismissing the divorce action on that ground. *See Estate of Burford v. Burford*, 935 P.2d 943, 955 (Colo. 1997) (stating that when one party to a divorce proceeding died following dissolution of the parties' marriage in a bifurcated divorce, "the dissolution action did not abate, and the district court properly maintained jurisdiction over the marital estate to conduct hearings to resolve financial matters raised in the dissolution proceedings"); *Fernandez v. Fernandez*, 648 So. 2d 712, 714 (Fla. 1995) (agreeing "that the trial court maintained jurisdiction to enter the final judgment determining the parties' property rights subsequent to the wife's death" where the court had dissolved the marriage prior to her death); *Barnett v. Barnett*, 768 So. 2d 441, 442 (Fla. 2000) (per curiam) ("[T]he death of a party after entry of a written, signed judgment of dissolution but prior to the rendition of a decision on a timely motion for rehearing concerning matters collateral to the adjudication of dissolution did not affect the dissolution decree or divest the court of jurisdiction to decide the

---

9. Not all claims raised in the current divorce action concerned property rights. For example, it is undisputed that the claims related to custody, child support, and parent-time abated upon Thomas's death. On remand, the district court should dismiss any remaining non-property claims that were rendered moot by Thomas's death.

remaining issues between the parties."); 27A C.J.S. *Divorce* § 194 ("Once a decree in divorce is granted and, thereafter, one of the parties dies, the court can continue with the equitable distribution of marital property.").

¶20　In cases such as this, in which "a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." Utah R. Civ. P. 25(a)(1). *See Porenta*, 2017 UT 78, ¶ 30 (stating that "[c]laims that survive the death of a party are typically chargeable against that party's estate" and citing rule 25(a)(1) of the Utah Rules of Civil Procedure as a means through which this may be achieved). But whether to substitute a party remains within the district court's discretion. *See Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶ 8, 449 P.3d 20 ("A district court's substitution ruling is a discretionary one[.]"). Additionally, as Thomas Jr. points out, the district court "has inherent discretionary authority to abstain from exercising jurisdiction where another court has concurrent jurisdiction." *See Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977) ("[A]s part of the inherent power that our district courts have, as courts of general jurisdiction, they undoubtedly could refuse to exercise jurisdiction if convinced that it would place an unreasonable burden upon some or all of the parties, or upon the court, to try the case here."); *id.* ("[T]he trial court does have concurrent jurisdiction and the power of discretion as to whether or not it will invoke that jurisdiction in a particular case."). These are all considerations that we leave to the district court's discretion on remand.[10]

---

10. We note that, sequentially, it may be more prudent for the district court to equitably distribute Lidia and Thomas's marital estate—which potentially represents only a portion of Thomas's vast estate that is the subject of the probate proceeding—rather than punting these issues to the probate court, especially where the district court had already prepared a ruling resolving all but

(continued…)

CONCLUSION

¶21    The district court was not required to dismiss the divorce action for lack of jurisdiction following Thomas's death. We therefore reverse and remand to the district court with instructions to reconsider Lidia's Motion for Entry of Final Property Distribution and Rule 25 Motion to Substitute Party.

───────────

one of the issues raised in the years-long divorce action that it superintended.