**2024 UT App 53**

## THE UTAH COURT OF APPEALS

PAUL B. BYWATER, DAN TAYLOR, GRACIA TAYLOR, AND
GOLDEN SPIKE RV, LLC,
Appellees,
*v.*
BRIGHAM CITY CORPORATION,
Appellant.

Opinion
No. 20220586-CA
Filed April 11, 2024

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 170100040

Matthew D. Church, Taylor P. Kordsiemon, and
Carson M. Fuller, Attorneys for Appellant

Jack Molgard, Malone Molgard, and Kenneth Allsop,
Attorneys for Appellee Paul B. Bywater

Brad C. Smith and Elizabeth A. Knudson, Attorneys
for Appellees Dan Taylor and Gracia Taylor

Stephen Stoker, Attorney for Appellee
Golden Spike RV, LLC

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1     Paul Bywater owns property in Brigham City. For many years, Bywater accessed his property through an easement that he had obtained across two neighboring properties—one was owned by Dan and Gracia Taylor, and the other was owned by Golden Spike RV, LLC. In 2012, Bywater conveyed a portion of his property to Brigham City so that Brigham City could build an

abutting road (1100 West). After 1100 West was completed, the Taylors and Golden Spike claimed that Bywater now had a right of access to 1100 West that terminated Bywater's easement across their properties. Brigham City, however, was unwilling to give Bywater unconditional access rights to the road.

¶2 Brigham City, Bywater, the Taylors, and Golden Spike eventually ended up litigating the question of whether Bywater now had direct access rights to 1100 West, or whether he instead still had only the easement across the properties owned by the Taylors and Golden Spike. In May 2022, the district court ruled that Bywater has an easement allowing him to access 1100 West. Brigham City appealed that ruling. But after doing so, it not only took no efforts to stay the ruling, but it also gave Bywater a permit to build a concrete "curb cut" from his property onto 1100 West.[1] Bywater soon hired a contractor to construct the curb cut, and he has used it to access 1100 West ever since.

¶3 We've received merits briefs from Brigham City, Bywater, and the Taylors, and Golden Spike filed a joinder in the Taylors' brief. Much of the briefing focuses on whether Bywater has an access easement to 1100 West. In a suggestion of mootness and again in their brief, the Taylors also argued that Brigham City's subsequent conduct has mooted the appeal, and Bywater then filed a request for leave to join in the Taylors' mootness argument. Brigham City, in turn, has opposed the mootness argument, and it has also filed a motion arguing that the Taylors should not be allowed to participate in this appeal.

¶4 For the reasons set forth below, we conclude that the mootness question is appropriately before us. We also conclude

---

1. A "curb cut" is "a ramp cut into a street curb to provide vehicular access to a driveway or parking space." *Curb cut*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/curb%20cut [https://perma.cc/KZ8J-PB7X].

that Brigham City's post-appeal inaction and actions have mooted this appeal. The appeal is accordingly dismissed.

## BACKGROUND[2]

¶5     Since 1984, the properties now owned by Bywater, the Taylors, and Golden Spike[3] have been subject to a recorded easement (the Easement). The Easement provided Bywater "ingress and egress across" the properties now owned by the Taylors and Golden Spike "because no available legal access existed at the time." The Easement also noted that Brigham City's Master Street Plan contemplated that a road would eventually be built on the west side of Bywater's property. It stated that "[i]f in the future this street is dedicated such that access to [it] is obtained, then the easements granted under this document shall be vacated and be null and void."

¶6     In March 2012, Bywater "conveyed to Brigham City the western 53 feet of his real property, so Brigham City could

---

2. "When reviewing a district court's decision granting summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Nassi v. Hatsis*, 2023 UT App 9, n.3, 525 P.3d 117. Our recitation of the facts and procedural history in this case is drawn from facts that were deemed undisputed by the district court or facts (mostly procedural) for which there's no dispute in the record.

3. While Bywater and the Taylors have been parties during all related litigation, Golden Spike bought its property in September 2021. The previous owner was M & A Investments, Inc., which joined the suit between Bywater and the Taylors in August 2020. Golden Spike was subsequently permitted to substitute as a "Defendant and Counterclaimant in this litigation in the place of M & A Investments, Inc." For simplicity, we refer to the relevant actions as if they were taken by Golden Spike.

construct 1100 West," and Brigham City subsequently built that road. Once 1100 West was built, the road formed the western edge of Bywater's property; 1100 South, a preexisting state highway, formed the southern edge of Bywater's property. Bywater remained landlocked to the north and east by private property owners, including the Taylors. Golden Spike's property sits directly to the east of the Taylors' property.

¶7     In April 2017, Bywater sued the Taylors, claiming they "obstructed and interfered with . . . use of his easement" and had improperly placed "obstructions and markers on the easement to limit the width and the location of the [his] use of his easement." The Taylors denied these allegations, stating that "[a]ccess is available to [Bywater's] property via 1100 West, which by the terms of" the Easement, "extinguishes" the Easement. In December 2017, recognizing that "the most efficacious solution" to their dispute would be for Bywater to obtain direct access to 1100 West, Bywater and the Taylors jointly sought a variance from certain public works standards, thereby allowing Bywater to build a curb cut that would provide him with access to the road. Brigham City responded that it would grant Bywater's request for the variance, but only if certain conditions were met. One of those conditions was that Bywater would agree to access the road from his property only for agricultural purposes.

¶8     In August 2019, instead of agreeing to the conditions, Bywater filed a motion to join Brigham City as a third-party defendant in the still-pending suit involving the Taylors. After the court granted that motion, Bywater filed a third-party complaint against Brigham City seeking a declaratory judgment that he had "an easement by implication" or "necessity" allowing him to access 1100 West.

¶9     In April and May of 2021, Bywater and Brigham City filed competing motions for summary judgment, each asserting that it was entitled to judgment as a matter of law on the question of

whether Bywater had an easement allowing him to access 1100 West. The Taylors and Golden Spike then filed separate memoranda, both of which supported Bywater's motion for summary judgment and opposed Brigham City's motion.

¶10   In May 2022, the district court issued a memorandum decision granting Bywater's request for summary judgment against Brigham City and denying Brigham City's request for summary judgment in its favor. In this decision, the court ruled that Bywater was "entitled to a right of access to 1100 West, where his property abuts a public road," as well as "a curb cut, so he can enjoy his right of access from his property to 1100 West." Based on these determinations, the court ruled that the "Easement [was] terminated."

¶11   After the court issued its memorandum decision, Bywater removed some "jersey barriers" that Brigham City had placed on the edge of his property to block access. Having done so, Bywater began accessing his property "by using a temporary ramp to drive over the curb and onto [his] property."

¶12   In June 2022, Brigham City appealed the district court's memorandum decision.

¶13   In July 2022, Bywater was "making preparation[s]" for a permanent driveway when a law enforcement officer "indicated that [Bywater] could not continue work on the project without a permit." "The law enforcement officer and [Bywater] then traveled down to the Brigham City [o]ffices for the purpose of inquiring about a permit." While there, Bywater interacted with Brigham City's director of public works, who was the main Brigham City official that Bywater had corresponded with about the access issue. After Bywater obtained a signature from his general contractor, Bywater delivered a signed permit application to the Brigham City offices and received a permit later the same day. Before Bywater poured any concrete, "[t]wo Brigham City inspectors . . . came and inspected the project to ensure that it was

in compliance with City requirements." They concluded that it was. Bywater ultimately spent $9,388.97 to grade the land, pour concrete, and install gates for the curb cut and driveway approach.[4]

¶14 In February 2023, the Taylors filed a suggestion of mootness and motion to dismiss in this court, which Bywater and Golden Spike joined. In the Taylors' view, "Brigham City undertook no action to preserve its rights nor did it issue the permit under protest," and "[c]onstruction has occurred." As a result, the Taylors contended that the appeal was now moot and must be dismissed. This court denied the motion to dismiss but deferred the issue of mootness to "plenary consideration of this appeal."

¶15 In March 2023, Brigham City filed its opening brief, and its arguments challenged the district court's conclusion that Bywater was entitled to an access easement to 1100 West. In May 2023, Bywater filed a brief responding to Brigham City's substantive arguments. That same day, the Taylors filed a brief of their own, and Golden Spike later joined in that brief. In addition to making their own arguments about the correctness of the district court's ruling regarding the Easement, the Taylors again argued that the appeal was moot because of Brigham City's failure to file a motion to stay the judgment and its approval of the curb cut permit. In support of that argument, the Taylors submitted an affidavit from Bywater laying out the facts recounted above regarding the curb cut. Bywater soon filed a "Request for Leave of Court to Join" the "Mootness . . . Section[]" of the Taylors' brief.

---

4. Many of the facts set forth in paragraphs eleven through thirteen are drawn from an affidavit from Bywater that was submitted in conjunction with the Taylors' brief. These facts are undisputed, and as we explain below, we conclude that these facts are appropriately before us.

¶16    Brigham City filed a motion to strike the Taylors' brief (as well as Golden Spike's joinder in it), arguing that the Taylors "are not natural parties to this appeal" and had failed to intervene "within 40 days of the date on which the petition for review [was] filed." Utah R. App. P. 14(c). In its reply brief on appeal, Brigham City then argued that because the Taylors' brief should be stricken, there would then be no mootness argument for Bywater to join. This court subsequently issued an order denying Brigham City's motion to strike the brief but allowing "the panel assigned this case for resolution on the merits to revisit this question and strike the brief at that time, if it deems appropriate." At oral argument, counsel from both sides presented arguments on the question of whether this appeal is moot.

## ISSUES AND STANDARD OF REVIEW

¶17    Brigham City challenges the district court's decision granting summary judgment to Bywater on several grounds. We would ordinarily review this ruling for correctness. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. But because we conclude that the issues raised in Brigham City's appeal are moot, we "lack judicial power to address" them. *In re M.S.*, 2023 UT App 74, ¶ 22, 533 P.3d 859; *see also Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 12, 289 P.3d 582 ("[B]ecause it is moot, we lack the power to address the underlying merits or issue what would amount to an advisory opinion.").

## ANALYSIS

¶18    The district court granted summary judgment to Bywater, ruling that he has an easement as a matter of law that allows him to access 1100 West. In its opening brief, Brigham City challenged that decision on several grounds, arguing, among others, that Bywater failed to exhaust his administrative remedies and that Bywater's status as an abutting landowner was insufficient to

create the easement. Bywater filed a brief responding to those legal arguments.

¶19 In both a suggestion of mootness and again in their brief, the Taylors argued that the issues raised by Brigham City were moot. Brigham City opposed the suggestion of mootness and then filed a motion to strike the Taylors' brief, arguing that they lack standing to participate in this appeal. Bywater nevertheless filed a request for leave to join the mootness section of the Taylors' brief. In its reply brief, however, Brigham City argued that if we strike the Taylors' brief, there is no mootness argument left for Bywater to join.

¶20 This is a somewhat unique set of circumstances involving the confluence of a mootness argument and a motion to strike the brief that had initially raised it. Given this, we're presented with two threshold questions relating to our ability to analyze the mootness issue: first, whether we can reach the mootness issue ourselves; and second, whether we can rely on the Bywater affidavit in doing so. As explained in Part I below, the answers to both questions are yes. From there, we turn in Part II to the question of whether this case is moot. We answer that question in the affirmative as well.

### I. We Have Authority to Analyze the Mootness Issue on the Basis of the Bywater Affidavit

¶21 First, we have authority to raise the question ourselves of whether Brigham City's appeal is moot. "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *In re adoption of L.O.*, 2012 UT 23, ¶ 8, 282 P.3d 977 (quotation simplified). "Mootness does not provide the court with a choice of whether to proceed with an appeal or not; it is jurisdictional." *State v. Legg*, 2016 UT App 168, ¶ 25, 380 P.3d 360 (quotation simplified); *see also First Nat'l Bank of Layton v. Palmer*, 2018 UT 43, ¶ 10, 427 P.3d 1169

(recognizing that a court lacks "jurisdiction over issues that have become moot"); *Mower v. Mower*, 2023 UT App 10, ¶ 19, 525 P.3d 110 (recognizing that mootness is a "jurisdictional bar"). And "although it is the duty of each party to inform the court of any circumstances which render moot one or more of the issues raised, the court may also raise the issue of mootness sua sponte to further a core judicial policy of limiting the scope of its power to issues in controversy." *In re adoption of L.O.*, 2012 UT 23, ¶ 7 (quotation simplified); *see also Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 26, 289 P.3d 582 ("Courts have a sua sponte obligation to carefully consider the propriety of their own jurisdiction."). Because of this, we reach the question of whether this case is moot on our own initiative.

¶22 Second, we also conclude that we may rely on the Bywater affidavit. It's true that the Bywater affidavit was originally attached to the Taylors' brief, and it's also true that Brigham City has filed a motion to strike that brief. But Brigham City has never contested the accuracy of the facts set forth in that affidavit. And after Bywater filed a request to join in the mootness section of the Taylors' brief, Brigham City never filed a formal opposition to his request. Instead, Brigham City simply suggested in its reply brief that if we first grant its motion to strike the Taylors' brief, there would be nothing left for Bywater to join.

¶23 But again, we have no need to rule on Brigham City's motion to strike the Taylors' brief in order to reach the mootness issue. We can raise the issue ourselves. The remaining question, then, is whether any party has given us a record from which to conduct this analysis. Under the unique posture of this case, we conclude that we can rely on the Bywater affidavit as part of this analysis.

¶24 Rule 24(c) of the Utah Rules of Appellate Procedure states: "More than one party may join in a single brief. Any party may adopt by reference any part of the brief of another." While

Bywater's filing was captioned as a "Request for Leave of Court to Join" in the "Mootness . . . Section" of the Taylors' brief, rule 24(c) itself doesn't require leave of court for one party to join in another party's brief. The rule simply and permissively says that "[m]ore than one party *may* join in a single brief." *Id.* (emphasis added). From this, it appears that joinder is automatic upon indication by a party. Since Bywater is a party in this appeal, the rule already allows him to join in the Taylors' brief without any "request" or motion. We accordingly construe his "Request for Leave" to join in the Taylors' brief as his joinder in it, and we likewise recognize that his joinder allows him to adopt the parts of the brief addressing mootness (including his own affidavit).

¶25   Although the rule would ordinarily permit this, Brigham City nevertheless suggests that Bywater's joinder in those mootness arguments can be chronologically short-circuited if we first strike the Taylors' brief. This presents something of a chicken-and-egg conundrum—which comes first, the motion to strike or the joinder? And this conundrum is potentially compounded here by the fact that Brigham City's motion to strike and Bywater's "Request to Join" were filed on the same day.

¶26   No party has given us any authority that sets forth a required order of operations in this scenario. In the absence of any authority compelling us to start with the motion to strike, we think it more appropriate to start with Bywater's joinder. As explained, Bywater is indisputably a party to this appeal, and Bywater previously joined the suggestion of mootness and motion to dismiss that were filed while briefing was underway, so it's clear that he intended to advance these arguments all along (albeit through the briefing labor provided by the Taylors). Moreover, what's at issue now is our ability to consider Bywater's own affidavit, and yet Brigham City has never suggested that Bywater has no right to continue participating in this appeal. In these circumstances, Brigham City has not persuaded us that Bywater should be prevented from relying on his own affidavit to

support his own assertion of his own property rights, particularly where Bywater seeks to rely on his affidavit to support an argument that this court can raise on its own initiative. For these reasons, we conclude that the affidavit is properly before us.[5]

## II. This Case Is Moot

¶27 Against that backdrop, we turn to the question of whether Brigham City's challenge to the district court's ruling is moot. We conclude that it is. As we've previously explained, a party's failure to obtain a stay of a lower court judgment may become "material to the question of mootness." *Wasatch County v. Utility Facility Review Board*, 2018 UT App 191, ¶ 14, 437 P.3d 406. In *Transportation Alliance Bank v. Int'l Confections Co.*, for example, our supreme court held that an appeal was moot because a debtor failed to seek a stay of an order approving a receivership sale. 2017 UT 55, ¶ 17, 423 P.3d 1171. And in *Richards v. Baum*, our supreme court likewise held that a would-be purchaser's challenge to a decision allowing a buyer to sell a property to someone else became moot when the would-be purchasers did not obtain a stay and the sellers then sold the property. 914 P.2d 719, 721–22 (Utah 1996); *see also Kellch v. Westland Mins. Corp.*, 484 P.2d 726, 726 (Utah 1971) (dismissing an appeal as moot where "[n]o steps were taken by the defendants to stay the operation of the judgment," and where the stock in question in the case was thus sold while the appeal was pending). In this sense, our cases establish the principle that an appeal may become moot "where the appealing party did not use available procedural tools to preserve the status quo." *Wasatch County*, 2018 UT App 191, ¶ 16.

---

5. In light of this conclusion, we also conclude that we have no need to rule on Brigham City's motion to strike the Taylors' brief. This is so because, as explained below, the record before us (including the Bywater affidavit) establishes that this case is moot.

¶28 Here, the ruling in question granted Bywater an access easement to 1100 West. Although Brigham City appealed that decision, it did not request a stay of that ruling pending appeal. As a result, Bywater has since accessed 1100 West from his property in reliance on the district court's ruling. And perhaps more importantly, although Brigham City filed its notice of appeal in June 2022, Brigham City then affirmatively gave Bywater a permit in July 2022 allowing him to build a "curb cut" on his property for the purpose of facilitating his access to 1100 West. This "construction project included a curb-cut, new concrete, gates, and other work in order to effectuate access," and it cost Bywater $9,388.97.

¶29 This additional construction matters, and our decision in *Wasatch County* explains why. There, a county asked us to hold that it had the right to prevent a power company from building a series of transmission lines. *Id*. ¶¶ 3–13. Although we initially ruled in the county's favor, *see Wasatch County v. Utility Facility Review Board*, 2018 UT App 1, ¶ 13, 414 P.3d 958, we learned through a petition for rehearing that "while the proceeding for judicial review had been pending, the [permit] had been issued, the new transmission lines had been constructed," and the lines in question were now in use, *Wasatch County*, 2018 UT App 191, ¶ 8. In light of this new information, we concluded that "the dispute" had now "been rendered moot," and we did so based on the "abundant case law support[ing] the proposition that once construction (of, for instance, buildings or power lines) has commenced, an appellant must avail itself of all avenues of preserving the pre-construction status quo or risk the construction rendering the appeal moot." *Id*. ¶¶ 10, 19.

¶30 So too here. As in *Wasatch County*, a local government is seeking the right to prevent a private party from performing an action; the local government lost in the district court; the local government appealed; and yet, after filing its notice of appeal, the local government not only failed to take steps to prevent the

private party from exercising its rights under the challenged ruling, but the local government affirmatively issued a permit allowing the private party to engage in construction that was intended to facilitate that activity. True, the district court's ruling itself determined that Bywater was entitled to such a curb cut. But again, Brigham City didn't seek to stay that ruling, nor did it subsequently grant the permit to build the curb cut under any sort of protest. Instead, it affirmatively allowed construction to commence. Under the principle set forth in *Wasatch County*, this case has become moot.

¶31    In an attempt to forestall this outcome, Brigham City suggests that there's a meaningful difference between allowing Bywater to construct the curb cut and allowing him to use it. In Brigham City's view, this case actually involves "a request for recognition of [its] regulatory authority," namely its authority to "restrict Bywater's use of that curb cut."

¶32    Under the circumstances of this case, we're skeptical that there is such a difference. After all, Bywater has been resistant to Brigham City's efforts to place any restrictions on his ability to access 1100 West in the past—as noted, Bywater was resistant to Brigham City's attempt to impose some restrictions on his ability to access the roadway in December 2017, which is why Bywater withdrew his earlier application and litigation commenced. When the district court ruled a few years later that Bywater had an easement, Bywater now had a ruling granting him unfettered access to the roadway. Based on this, he then sought permission to construct a curb cut from which he could access 1100 West. Brigham City knew this, and yet it approved this request anyway, without any request for stay, formal protest, or effort to "preserv[e] the pre-construction status quo," *id*., ¶ 19. Then, based on that approval, Bywater spent almost $10,000 constructing his access point.

¶33 This alone undermines Brigham City's attempt to avoid the mootness implications of its past inaction and actions. After all, our decision in *Wasatch County* (as well as in the cases cited therein) turned on a party's lack of opposition to "construction" efforts, which is the very thing that occurred here.

¶34 In any event, by its own admission, Brigham City never attempted to assert any right of "regulatory authority" over this curb cut. At oral argument, a member of this court asked Brigham City's counsel about the "mechanism" by which the city would attempt to restrict Bywater's "use" of the curb cut. Counsel responded that the city would "record [a] document on the property" setting forth any "condition[s]" that it sought to impose, and that it might then attempt to "revoke[]" those conditions at some future point. In rebuttal, however, opposing counsel then informed us that when Brigham City "issued the permit for the curb cut," that permit "contained no conditions, no limits. It wasn't subject to anything." Brigham City has not refuted this assertion.

¶35 Given this, what we have before us is a ruling from a district court granting access to a roadway, Brigham City's failure to seek a stay of that ruling, Brigham City's approval of a construction project that was intended to create an access-point to the roadway, Brigham City's failure to impose any restrictions on its approval of that access-point, the landowner's expenditure of almost $10,000 on the project, and the landowner's subsequent use of his access point without any restriction for 18 months. In these circumstances, we conclude that Brigham City's inaction and actions alike have failed to preserve the "status quo," thereby rendering this appeal moot.

CONCLUSION

¶36 The district court ruled that Bywater has an access easement to 1100 West, and Brigham City's subsequent inaction

and actions have mooted Brigham City's ability to challenge that decision. We therefore lack jurisdiction to consider its arguments and thus dismiss this appeal.

———